**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| TORIA PIERCE-TAYLOR<br>7944 Fayette Street<br>Philadelphia, PA 19150 | CIVIL ACTION |
| v. | No. ______________ |
| SALISBURY MANAGEMENT, LLC, d/b/a NEW STORY<br>1196 E. Washington Lane<br>Philadelphia, PA 19138<br>and<br>THE GREEN TREE SCHOOL, d/b/a GREEN TREE SCHOOL AND SERVICES<br>1196 E. Washington Lane<br>Philadelphia, PA 19138 | **JURY TRIAL DEMANDED** |
| Defendants. | |

**CIVIL ACTION COMPLAINT**

Plaintiff, by and through his undersigned counsel, hereby avers as follows:

**INTRODUCTION**

1. This action has been initiated by Toria Pierce-Taylor (*hereinafter* referred to as "Plaintiff," unless indicated otherwise) against The Green Tree School, d/b/a Green Tree School and Services and Salisbury Management, LLC, d/b/a New Story (collectively, "Defendants"). Plaintiff asserts (retaliation) violations of Americans with Disabilities Act ("ADA"), as well as under common law related to protections for abuse or neglect reports / objections in a workplace. Plaintiff contends she was subjected to retaliatory mistreatment while employed (as explained *infra*) and that she was unlawfully (and retaliatorily) terminated from her employment.

**JURISDICTION AND VENUE**

2. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks

redress for violations of federal laws. State claims asserted herein are proper under this Court's ancillary or supplemental jurisdiction to hear state claims arising out of the same common nucleus of operative facts as those set forth in Plaintiff's federal claims.

3. This Court may properly maintain personal jurisdiction over Defendants because their contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310 (1945) and its progeny.

4. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this District because actions underlying this case occurred in this District, and Defendants are deemed to reside where they are subject to personal jurisdiction (rendering venue appropriate for multiple reasons).

**PARTIES**

5. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

6. Plaintiff is an adult female residing at the above-captioned address.

7. The Green Tree School, d/b/a Green Tree School & Services (hereinafter "Defendant GTS" where referred to individually) is a non-profit, state-licensed approved private school in Philadelphia, Pennsylvania. Defendant GTS provides specialized education and therapeutic support for children and young adults aged 5 to 21 with autism and emotional support needs.

8. Salisbury Management LLC, d/b/a New Story (hereinafter "Defendant SM-LLC where referred to individually) self identifies on its own website as: (a) "operat[ing] a network of schools and programs that provide specialized education, therapeutic support, and pathways for

growth;" and (b) "New Story's Schools serve students with autism, emotional and behavioral disabilities, and mental health challenges."[1]

9. While Plaintiff physically worked within Defendant GTS and was managed by personnel within Defendant GTS, she was also (from a statutory standpoint) an employee of Defendant SM-LLC. Some examples of joint management and oversight include but are not limited:

(1) Defendant SM-LLC represents on its own website that it operates schools such as Defendant GTS.

(2) Defendants SM-LLC and GTS utilize the same human resources management to oversee numerous school locations (and they are direct employees of Defendant SM-LLC). Just by way of a single example of an HR manager (Michelle Smith) Plaintiff interacted with while employed, her online profile represents she is a "New Story" employee as follows:




(3) Even as of Plaintiff's termination from employment, her termination letter acknowledged that benefits were processed through SM-LLC ("New Story"). An excerpt from Plaintiff's termination letter states as follows:

> Should you have any questions regarding your final paycheck, benefits, or other employment-related matters, please contact Benefits@newstory.com.

(4) Policies and oversight of Defendant GTS were all by and through management of Defendant SM-LLC.

(5) Letters and emails bore the markings of both Defendant GTS and Defendant SM-LLC simultaneously (indicating joint employment or joint employers).

[1] *See* https://newstory.com/

10. Due to overlapping resources, management, advertisement, controls, benefits, directives, and other (joint and integrated) structures, Defendants are properly single, joint and/or integrated employers for all purposes in this lawsuit.

11. At all times relevant herein, Defendants acted by and through their agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

## FACTUAL BACKGROUND

12. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

13. Plaintiff is a 40-year-old woman.

14. Plaintiff was hired by Defendants in or about September 2020; and in total, Plaintiff was employed by Defendants for slightly in excess of five (5) years.

15. Plaintiff was employed by Defendants in a full-time capacity working as a Para Educator, Behavioral Manager, and then (in her last role as a) Lead Behavioral Manager. She had been elevated in both job titles and duties over time for exemplary performance during her tenure with Defendants.

16. Some of Plaintiff's relevant management (and human resources personnel) during her period of employ with Defendants included but was not limited to:

- Clinton Nelson ("Nelson") – He is an approximate 4.5-year employee of Defendants and has served as the Regional Director of Operations. He supervised Plaintiff from in or about 2024 – 2025 (during her last year of employment).

- Kweko Akoto ("Akoto") – He is an approximate 5-year employee of Defendants and has served as the Lead Behavior Manager. He supervised Plaintiff until the fall of 2024.

- Brietnni Singleton ("Singleton") – She has been the Assistant Director of Behavioral Services. She (allegedly) supervised Plaintiff during her last few weeks of employment, although Plaintiff remained in the indirect supervision of Clinton as well through termination.

- Markia Grant ("Grant") – She is an approximate 8-year employee of Defendants. She is the HR Manager of Defendants.

- Janet Durkin ("Durkin") – She has served as Human Resources Director for Defendants.

- Michell Smith ("Smith") – She is an approximate two-decade employee of Defendant SM-LLC overseeing Defendant SM-LLC locations from a human resources standpoint. She has been employed by Defendants as their joint Vice President of Human Resources ("HR") Operations.

17. Plaintiff generally received very good annual evaluations during her long tenure. By way of examples only:

(a) Plaintiff's September 2021 – June 2022 annual evaluation identified her as "fully meets" or "consistently exceeds" expectations in all rated categories with an overall rating of "meets expectations."

(b) Plaintiff's August 2022 – January 2023 mid-year evaluation identified her as "fully meets" or "consistently exceeds" expectations in all rated categories with an overall rating of "meets expectations."

(c) Plaintiff's October 2024 – June 2024 annual evaluation identified her as "fully meets" or "consistently exceeds" expectations in most of her rated categories with an overall rating of "meets expectations."

18. Prior to September of 2024, Plaintiff was supervised by Akoto. From September 2024 through September 15, 2025, her termination, Plaintiff was primarily supervised by Nelson (the Regional Director of Operations). During her last approximate two (2) weeks of employment, Plaintiff was (allegedly) directly supervised by Singleton *and indirectly supervised* by Nelson. This is explained *ad nauseum infra.*

19. On or about September 23, 2024 (*approximately a year before her termination* from employment), Plaintiff had discovered that her then manager (Akoto) was falsifying and forging

Crisis Prevention Institute cards (hereinafter "CPIs" or "CPI cards" as referred to internally). Staff possessing such a CPI card is official documentation that they have successfully completed certified training in behavioral de-escalation and crisis intervention. Such CPI cards were critical to Defendant GTS's operations as an approved school providing intensive autism and emotional support.

20. Instead of having staff members complete a curriculum, learning proper verbal and physical handling of those in need of emotional support of physical holds - - Akoto was falsifying CPI cards for expediency to give the impression staff members were certified who lacked the actual training or education.

21. After discovering ongoing falsification by Akoto, Plaintiff confronted him directly and recorded the conversation where Akoto admitted he had been falsifying CPI cards to her.

22. After discovery of the numerous incidents of falsification by Akoto, Plaintiff promptly reported the falsification to Smith (Vice President of Human Resources) who downplayed the significance of any concerns and told Plaintiff she needs to "delete" the recording Plaintiff told Smith she possessed of Akoto's admissions.[2]

23. Plaintiff attempted to share examples (such as the following) of her name having been forged on CPI Cards (of non-trained staff) by Akoto (as Plaintiff was a certified trainer who did not sign or train such individuals):[3]

---

[2] One of the pretextual reasons Plaintiff would be given for her termination roughly a year later was that she had recorded the conversation with Akoto despite that it was already known to the highest levels of Human Resources a year earlier.

[3] Plaintiff possesses other examples as well that she attempted to report as a form of abuse and neglect as well as falsification and forgery of her name by Akoto.




24. Plaintiff complained to both Smith and Akoto that falsification of CPI cards constituted “abuse” and “neglect” towards students because it was resulting in them being improperly restrained, causing escalations of their health and emotional problems, resulting in unnecessary injuries to students, and other negative impacts to disabled children under the care of Defendants.

25. Smith told Plaintiff all Plaintiff was doing was complaining about a “very messy process” and no action was being taken about her concerns. To Plaintiff, Smith (and HR in general) continually helped conceal ongoing wrongdoing and tried to avoid characterizing anything as fraud, neglect, abuse, or falsification. Plaintiff memorialized Smith’s refusal to take any action about her concerns of falsification on or about October 31, 2024, and continued to seek clarification as to why nothing was being done as follows:

> Good morning Michelle,
> Thank you again for the response There were a few other topics that were discussed in our October 16, 2024 Conclusion of the investigation.
> As it pertains to My supervisor forging the CPI cards that were in my office. You indicated you don’t consider his action as misconduct but instead used the term/ verbiage that what he did was a “very messy process” Could you please elaborate on other examples that would fall under the umbrella of a messy practice/ process?

26. Prior to April 8, 2025, Plaintiff had a work injury, required medical accommodations, took a several-month medical leave, and felt she was not being treated fairly in many respects due to her health problems (and accommodation needs).

27. On or about April 8, 2025, Plaintiff filed a Charge with the Equal Employment Opportunity Commission ("EEOC"). In her EEOC Charge, Plaintiff:

(a) Complained of mistreatment because of her health condition(s);

(b) Asserted she was not given proper medical accommodations; and

(c) Asserted she was retaliated against due to her health, light-duty needs, and due to her accommodation discussions.

28. Prior to May of 2025, Plaintiff:

(a) Was never disciplined;

(b) Received *continual* awards;

(c) Received shout outs (an internal business phrase), praise, and written recognition from faculty and staff members; and

(d) Was recognized for her outstanding performance at times, her safety skills, and other workplace contributions. There are numerous communications and awards to this effect.

29. Defendants' management was well aware of Plaintiff's EEOC Charge, as it was served upon them by the EEOC. Moreover, on or about May 12, 2025, Defendants submitted a 6-page Position Statement (and response) to the EEOC opposing Plaintiff's EEOC Charge.[4]

---

[4] Plaintiff does not pursue claims for disability discrimination in this lawsuit. Rather, as outlined in the Count Section of this lawsuit, she pursued claims of retaliation for: (a) engaging in protected activity by filing an EEOC Charge(s); (b) for complaining of mistreatment for her accommodation needs; and (c) for complaining about retaliation (a form of protected activity in and of itself) due to her medical or accommodation needs. These are all forms of statutorily protected conduct under the ADA.

30. During her last several years of employment, Plaintiff felt that Defendants were progressively worsening in that there was more abuse, neglect, non-training, falsification of CPI cards, and a focus on downplaying all such misconduct (instead of engaging institutional remediation). As a result, Plaintiff was being *very vocal* complaining of "abuse" and "neglect" using such terminology regularly <u>throughout late 2024 and throughout all of 2025</u> (until her termination). To provide ***only some*** examples of what had been occurring over the years:

- On 8/22/22, Akoto (Plaintiff's prior manager) was distracted using his cellular phone. A non-verbal student exited the building, walked through traffic on the streets, and was only returned to the school when a civilian from the public rescued him. This student was then immediately withdrawn by his parents. All of Akoto's gross negligence was on video for review. *Defendants attempted to downplay and/or conceal what occurred and <u>did not terminate Akoto</u>.*

- On 9/22/22, Akoto was witnessed punching a student in the stomach who fell to the ground. Akoto yelled "get up and stop acting like a little bitch." *Akoto was not terminated.*

- On 10/9/23 Stefani Macafee ("Macafee") and others were failing to report a sexual incident among students who had eloped unnoticed for hours. Plaintiff contacted Child Protective Services ("CPS") for an investigation by law enforcement. *Such students were removed from Defendants by their parents, but no terminations of staff occurred.*

- On 10/27/23, a student called Qwame Byrd ("Byrd") a "bitch." Byrd (a Lead Behavior Manager) attacked the student by grabbing his neck, lifting him off the ground, and choking him until his tongue hung out. *Nelson intimidated the student not to escalate the matter, and Byrd was only suspended for a single day and transferred to a different location (despite his situation warranting immediate termination and serious legal ramifications)*.

- On 2/5/24 Eric Gainor ("Gainor"), a Behavioral Manager, was accused of punching and slamming a student to the ground. *Gainor was merely transferred to another location of Defendants.*

- On 4/11/24, three Behavioral Managers put a student in a hold, had dragged him, and were so rough that the student was complaining of intense pain in his arm. The student was removed from the school by his parents after it was revealed he was the subject of abuse and had his arm broken by such employees. *Defendants*

*attempted to conceal what had happened from the mother (by misrepresenting the incident) – and to Plaintiff's knowledge – a lawsuit ensued.*

- On 3/11/25 Samone Williams ("Williams") reported child abuse (including intentional hitting of students) and was terminated shortly thereafter. The person she was accusing of striking children was then later reported to throw a bottle of hand sanitizer at a student. *She was moved to a different classroom and not terminated.*

- An alleged rape occurred in early 2025, and Maureen Manning (Director of Clinical Services) dissuaded Childline reporting by several staff members intimidating them. Several of these staff members promptly resigned to avoid jeopardizing their careers or licensure.

- In early May of 2025, there was improper force and restraint used on a student at Macafee's direction(s) under the circumstances.

- In November 2025, a new Behavioral Manager (Irving) slammed a child to the ground, Akoto was witnessed punching a student by several staff members, and Macafee was accused of abuse. *All employees were not terminated, and at most, were temporarily removed for a few days from work.*[5]

31. The examples of abuse above are <u>just a fraction</u> of what Plaintiff was witnessing, but she provides more prominent examples to illustrate that despite serious physical assaults upon children, neglect and abuse, supervisors were not being terminated, they were just being moved around, and all of the problems were persisting while Defendants were improperly training and concealing institutional failures. *Yet Plaintiff would later be terminated merely for being too critical of colleagues (explained infra).*

32. In addition to Plaintiff repeatedly raising concerns of "abuse" and "neglect" using such exact terminology with HR and her management, Plaintiff was also emailing Defendants about such concerns. At times Plaintiff would even say what is going on is "illegal."

---

[5] Notably, some of the witnesses use cell phones to show video of abuse to human resources – and unlike Plaintiff who was pretextually terminated for a distant recording – they were not terminated (showing disparate treatment towards Plaintiff).

33. To provide one example - - on or about May 13, 2025, Plaintiff emailed Nelson, Akoto and Grant about areas under her supervision (the AS and VB wing). In her email, she complained about *inter alia*: (a) institutional practices are "significantly compromise[ing] our ability to ensure student and staff safety;" (b) a child was improperly restrained, restricted, and carried down two flights of stairs, which was "deeply troubling;" (c) student behavior is "unsupervised" due to inadequate staffing; and (d) other concerns.

34. Defendants were so understaffed that Plaintiff feared for the children as so much abuse and neglect was occurring, and she was witnessing staff and management improperly handle such students. Plaintiff complained internally about abuse, threatened to escalate concerns of abuse to outside agencies, and at times did in fact cooperate with external agencies to provide information.

35. On or about July 22, 2025, Plaintiff was informed by Nelson she would no longer be re-certified as a CPI Trainer (verbally and via email recap) for allegedly not being non-compliant with training *and because he received an email that Plaintiff was out of compliance*. Plaintiff responded on July 24, 2025, <u>after extensive research</u> as follows (determining that Nelson ***completely lied*** to her to avoid having her remain (or to be renewed) as a CPI Trainer for Defendants):

> Following up on our conversation today concerning the recertification of my CPI instructor status, I wanted to provide further clarification. You mentioned receiving an email from CPI indicating I was ineligible for recertification. I have thoroughly investigated this matter.
>
> I contacted CPI directly and submitted a ticket (number 3783278) to their support team to inquire about the email you referenced that stated I was out of compliance.
> Angie, a CPI representative, confirmed that no such email exists in their records. I subsequently followed up with Christina at CPI at approximately 3:27 pm. Christina confirmed that my training records show completion of six classes, training 32 staff members, and a total of 48.5 hours of instruction. Based on this information, CPI indicates I am fully compliant with their program and eligible for recertification between now and October 28, 2025. This recertification process differs from the initial four-day training you mentioned you had not anticipated into the budget.
>
> Given the updated information from CPI, I would appreciate your guidance on how to proceed with the previously allocated budget for my re-certification training. Please let me know how you would like to move forward.

36. Being a CPI trainer was exceedingly important to Plaintiff as it enabled her to help protect the children, provide advice on handling students (physically and emotionally), and to ensure overall child safety (a care sorely lacking within Defendants).

37. Plaintiff confirmed Nelson never actually received an email of non-compliance from CPI and that she completed all necessary training for renewal or recertification, rendering all of Nelson's prior email communications false. Plaintiff continued to follow up with Nelson because she learned he lied about receiving an email that she was out of compliance and she pressed as to why she was not being renewed by Defendants as a CPI Trainer (an important credential to protecting children). Nelson completely changed his entire story as follows (via email dated July 25, 2025):

> As you recall when we spoke yesterday, I had already acknowledged that it looked like I had been given some incorrect information and that you had in fact documented the required amount of training.
>
> However, that information was only one of the factors that influenced the decision not to include you in the recent on-site CPI trainer certification. The decision remains a valid one.

38. Nelson modified his entire rationale to Plaintiff not being renewed as a Certified CPI Trainer by Defendants (for her purported failures) to suddenly claim that no employee in her position is required to be a CPI Trainer and some other nonsensical explanations (not the fault of

Plaintiff). In reality, Defendants were attempting to remove Plaintiff from such oversight to lessen or minimize her abuse and neglect complaints.

39. On or about July 28, 2025, Plaintiff lodged a formal complaint to Grant asking for an investigation into her "recent demotion from CPI Instructor" explaining Nelson had continually made false statements that kept evolving to justify the retaliatory action(s) against her.

40. In late July of 2025, Plaintiff also filed ***a second*** EEOC Charge asserting that she was the victim of "Retaliation" for her "charge of discrimination with the EEOC on April 8, 2025" and outlined a pattern of retaliation and the retaliatory removal / demotion of her as a Certified CPI Trainer.[6]

41. By August of 2025, Plaintiff was inquiring as to why she was not being given an annual review like everyone else had already received. Plaintiff was contacted by Grant and was informed "this delay is not a reflection on you" but just a "delay" to make sure her review "is completed accurately and fairly." Grant further said the delay was also in part because she had two managers in the last year.

42. On or about August 4, 2025, Plaintiff sought more clarification as to why she was being singled out for a delay in her evaluation clarifying that Nelson had in fact actually supervised her for nearly the last entire year since September of 2024.

43. In at least two (2) conversations with Plaintiff wherein Plaintiff was expressing various concerns to her in her last several months, Grant had mentioned Plaintiff having filed claims with the EEOC seeming exasperated with Plaintiff.

---

[6] Plaintiff only asserts retaliation claims under the ADA in this lawsuit. Her protected activities include but are not limited to: (a) filing of two (2) EEOC Charges; (b) complaints of discrimination or retaliation internally; (c) use of an accommodation of medical leave (which is a well-established protected leave in and of itself); and (d) other concerns outlined in both of her EEOC Charges.

44. By email dated September 15, 2025, Plaintiff was abruptly informed by Grant of a change to her reporting structure. She was informed as follows:

> I wanted follow-up with you regarding your supervision and support structure. Effective immediately, your direct supervisor will be Briettni Singletary, who will provide guidance, coaching, and address any performance or conduct matters.
>
> This change is a preventative and supportive measure designed to ensure a respectable and professional work environment. It is not disciplinary in nature but rather intended to promote a neutral and positive working relationship moving forward.

45. In the aforesaid September 15, 2025, email, Plaintiff was further instructed on limitations of her ability to further communicate with Nelson (including a required presence of HR personnel or neutral staff).

46. Plaintiff was very troubled by her abrupt transition under the supervision of Singletary because *inter alia*: (1) several people worked in Plaintiff's role (Lead Behavioral Manager) and she was the only person Singletary would supervise in such a role; (2) supervision of Plaintiff was not (ordinarily) within Singletary's purview; (3) Plaintiff was being restricted in communicating with the primary manager (Nelson) overseeing people in her role and her operations;[7] (4) Plaintiff had <u>never</u> been disciplined *but Defendant was signaling* she was about to be disciplined by saying via email Singletary will provide "coaching, and address any performance or conduct matters." To Plaintiff, it was signaling that Defendants were about to come up with a rationale to get rid of Plaintiff (which turned out to be true, as Plaintiff was suspended 15 business days later and then promptly terminated thereafter).[8]

---

[7] All Plaintiff had done was initiate EEOC Charges about his treatment of her and complain that he objectively lied, verifiable in emails, about removing her from a CPI training role.

[8] It is a common approach to place an employee under a new manager to feign an independent decision to discipline or terminate, but Defendants could not even wait more than two (2) weeks to find a pretext to get rid of Plaintiff.

47. By September 23, 2025, Singletary (who reported to Nelson) was documenting to Plaintiff that she failed to upload documentation of a restraint (by staff members). But Plaintiff was asking for clarifications (not refusing to do anything), as: (a) she didn't have enough information about the incident (as she had no knowledge of the underlying cause for any restraints); (b) she lacked proper credentialing or certification to submit certain paperwork; and (c) she was attempting get clarity from upper management and human resources.

48. Plaintiff was suspended via email by Grant on or about October 6, 2026, and was informed there was an "investigation" pending. Grant in her email (regarding suspension) brought up things like *inter alia* a year earlier Plaintiff had made a recording or that she questioned the performance of colleagues not properly fulfilling their job duties. The excuses to place Plaintiff out of work were atrocious.

49. Plaintiff received a letter dated October 13, 2025, from Defendants which: (a) was signed by Durkin (HR Director); (b) stated her termination was "effective October 10, 2025;" and (c) asserted Plaintiff was terminated for not "upload[ing] required restraint reporting documentation, for "harass[ing] employees," for "aggressively question[ing]" employees about issues, and because she "recorded" a conversation. The letter concluded that Plaintiff was overall being terminated for creating a "toxic work environment" for others.[9]

50. Defendants – by comparison – kept an employee like Akoto who had verifiably assaulted students over and over in a span of years, had numerous complaints lodged about him, and who was the subject of various agency complaints (and who forged and falsified training certifications of staff).

---

[9] This is of course only a summary of a two-page letter intended to convey the material aspects of the letter, not an exhaustive list of its contents.

51. Numerous comparators engaged in immediately terminable (or criminal offenses), yet Plaintiff was pretextually terminated for: (a) attempting to complain about Akoto's falsification via a recording; (b) "questioning" employees as to abuse and neglect concerns; and (c) asking questions about documentation she was being asked to sign for which she lacked full information.

52. On or about November 12, 2025, Akoto was again witnessed physically assaulting a student. Witnesses recorded the assault with their cellular phones and demanded a report to Child Protective Services. These witnesses, who recorded, were not disciplined or terminated (unlike Plaintiff who submitted EEOC Charges and threatened abuse and neglect escalations.

**Count I**
**Violations of the Americans with Disabilities Act ("ADA")**
**(Retaliation Only)**
**- Against Both Defendants -**

53. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

54. Plaintiff seeks relief for the following adverse actions:

(1) For being subjected to a hostile work environment;

(2) For being removed as a Certified trainer; and

(3) For being suspended and then terminated from her employment.

55. The adverse actions taken against Plaintiff as outlined herein were because she filed an EEOC Charge in April of 2025 and again in July of 2025, and because she verbally complained (internally) to management and HR that she felt she was being unfairly treated for her past health problems and accommodation needs.

56. Plaintiff experienced significant hostility, removal from training, a new manager, suspension, false investigatory allegations, and a termination without any progressive warning or discipline in close temporal proximity to having engaged in such aforesaid protected activities.

57. Plaintiff's retaliatory termination as set forth herein constitutes unlawful retaliation in violation of the ADA.

**Count II**
**Violations of Pennsylvania Common Law**
**(Retaliation)**
**- Against Both Defendants -**

58. In *Krolczyk v. Goddard Sys.*, 2017 PA Super 159, 164 A.3d 521, 528 (Sup. Ct. 2017), the Superior Court reversed the Court of Common Pleas explaining *inter alia*:

(1) A person in Plaintiff's job position is a "mandated reporter" under 23 Pa.C.S. § 6311. *Id.* at 528.

(2) A mandated reporter complaining internally of perceived or suspected abuse or about intending to report abuse externally is protected as a matter of public policy from adverse action(s) or termination. *Id.* at 529.

59. Plaintiff reported what she believed to be suspected child abuse. These complaints are (and were) legally protected from retaliation in the Commonwealth of Pennsylvania.

60. Separately, Plaintiff refused to be complicit with ongoing downplaying, concealment, and coverups of child abuse within Defendant. There are numerous criminal codes that prohibit such conspiratorial actions or inactions, and thus Plaintiff separately refused to participate in and/or objected to criminality and illegality.

61. It is clearly prohibited in this Commonwealth to terminate an employee for refusing to commit criminal or unlawful acts. *See. e.g. Levito v. Hussman Food Service Co. Victory Refrigeration Div.*, WL 1426 (E.D. Pa. 1990); *Woodson v. AMF Leisureland Centers, Inc.,* 842 F.2d 699, 702 (3rd Cir.1988); *Shaw v. Russel Trucking Line, Inc.*, 542 F.Supp. 776 (W.D.Pa.1982); *Dugan v. Bell Tel. of Pennsylvania,* 876 F.Supp. 713, 725 (W.D.Pa.1990).

62. Plaintiff's termination from employment for engaging in mandated reporting; and/or refusal to engage in unlawful conduct violated well-established public policy in this Commonwealth.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority;

B. Plaintiff is to be awarded punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

C. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to damages for emotional distress / pain and suffering);

D. Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law; and

E. Plaintiff is to receive a trial by jury as requested in the caption of this Complaint.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: ______________________

Ari R. Karpf, Esq. (91538)
8 Interplex Drive, Suite 210
Feasterville-Trevose, PA 19053
215-639-0801 (P)
215-639-4970 (F)
akarpf@karpf-law.com

Dated: October 2, 2026

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

# CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Toria Pierce-Taylor | : | CIVIL ACTION |
| v. | : | |
| Salisbury Management, LLC, d/b/a New Story, et al. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255. ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits. ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos. ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.) ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks. (x )

| 10/2/2026 | [signature] | Plaintiff |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-639-0801 | 215-639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: Defendants place of business

***RELATED CASE IF ANY:*** Case Number:__________ Judge:__________

1. Does this case involve property included in an earlier numbered suit? Yes ☐
2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit? Yes ☐
3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit? Yes ☐
4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual? Yes ☐
5. Is this case related to an earlier numbered suit even though none of the above categories apply? If yes, attach an explanation. Yes ☐

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

**Civil Litigation Categories**

*A.* ***Federal Question Cases:***

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Wage and Hour Class Action/Collective Action
- ☐ 6. Patent
- ☐ 7. Copyright/Trademark
- ☐ 8. Employment
- ☐ 9. Labor-Management Relations
- ☒ 10. Civil Rights
- ☐ 11. Habeas Corpus
- ☐ 12. Securities Cases
- ☐ 13. Social Security Review Cases
- ☐ 14. Qui Tam Cases
- ☐ 15. Cases Seeking Systemic Relief ***see certification below***
- ☐ 16. All Other Federal Question Cases. *(Please specify)*:__________

**B.** ***Diversity Jurisdiction Cases:***

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury (*Please specify*):__________
- ☐ 7. Products Liability
- ☐ 8. All Other Diversity Cases: *(Please specify)*__________

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

[X] Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

[ ] None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

PIERCE-TAYLOR, TORIA

**(b)** County of Residence of First Listed Plaintiff: Philadelphia
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Ari R. Karpf, Esq.; Karpf, Karpf & Cerutti, P.C., 8 Interplex Drive, Suite 210, Feasterville-Trevose, PA 19053; 215-639-0801; akarpf@karpf-law.com

## DEFENDANTS

SALISBURY MANAGEMENT, LLC, D/B/A NEW STORY, ET AL.

County of Residence of First Listed Defendant: Philadelphia
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [X] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**CIVIL RIGHTS**
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [X] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty

Other:
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing ***(Do not cite jurisdictional statutes unless diversity)***: ADA (42USC12101)

Brief description of cause: Violations of the ADA as well as under common law related to protections for abuse or neglect reports/objections in a workplace.

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [X] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):* JUDGE ______ DOCKET NUMBER ______

DATE 10/2/2026 SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # ______ AMOUNT ______ APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______